UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| v. | : | **CRIMINAL NO. 18-193** |
| **DKYLE JAMAL BRIDGES**<br>**KRISTIAN JONES** | : | |

**GOVERNMENT'S MOTION TO ADMIT AUDIO RECORDINGS**

The United States of America, by its attorneys, William M. McSwain, United States Attorney for the Eastern District of Pennsylvania, Seth M. Schlessinger, Assistant United States Attorneys, and Jessica L. Urban, Trial Attorney, Department of Justice hereby move for the admission of audio recordings at the trial of the above-captioned matter and in support thereof avers:

The defendants in this matter are both charged in Count One of the Indictment with, from in or around 2012 through on or about September 21, 2017, conspiring to commit sex trafficking of a minor and by force, in violation of 18 U.S.C. §§ 1591 and 1594(c). In each of Counts Two and Three, defendant Dkyle Jamal Bridges is charged with sex trafficking a particular victim by force (that is, Z.W. and J.S. respectively), in violation of 18 U.S.C. §§ 1591(a)(1) and (b)(1). In each of Counts Four through Six, both defendant Bridges and defendant Kristian Jones are charged with the sex trafficking of a particular minor victim by force (that is, B.T., N.G. and L.C.), in violation of 18 U.S.C.§§ 1591(a)(1), (b)(1) and (b)(2). The charges arise out of a long-running prostitution enterprise led by Bridges, and in which Jones participated, in the course of which multiple victims (including multiple minor children) were caused to engage in commercial sex acts in various locations in Pennsylvania, Delaware, Maryland and New Jersey. Bridges frequently employed threats and violence in order to further the prostitution enterprise, while Jones assisted

Bridges in running the enterprise in various capacities.

At trial, the government intends to offer into evidence certain audio recordings capturing telephone calls which were recorded between the defendants, and between the defendants and other persons, pursuant to the standard policy to record such calls of the correctional facilities in which the defendants were housed (that is, the Federal Detention Center in Philadelphia, and the Worcester County Detention Center in Maryland). At the time the audio recordings are played aloud, the Government will move to distribute transcripts of the conversations to the jury, which can be admitted either as substantive evidence or simply as an aid to the jury to be used at the time the tape recordings are played in court. The government is in the process of copying the audio records in its possession and will provide a copy to each defendant. At this time, the government is still in the process of determining which specific recordings it will seek to admit and publish at trial. The government reserves the right to provide transcripts closer in time to trial if necessary and/or to play tapes at trial without transcripts.

In United States v. Starks, 515 F.2d 112 (3d Cir. 1975), a decision predating the adoption of the Federal Rules of Evidence, the Third Circuit held "that the burden is on the government 'to produce clear and convincing evidence of authenticity and accuracy as a foundation for the admission of such recordings,'" id. at 121 (quoting United States v. Knohl, 379 F.2d 427, 440 (2d Cir. 1967), cert. denied, 389 U.S. 973 (1967)), and that the following factors are generally relevant considerations:

(1) That the recording device was capable of accurately recording the conversations now offered in evidence.

(2) That the operator of the device was competent to operate the device.

(3) That the recordings are authentic and correct.

  (4) That changes, additions or deletions have not been made in the recordings.

  (5) That the recordings have been preserved in an appropriate manner.

  (6) That the speakers are identified.

  (7) That the conversations elicited were made voluntarily and in good faith, without any kind of inducement.

Starks, 515 F.2d at 121 n.11.

  However, the ruling in Starks, both as to burden and content of proof, was substantially undermined by the later adoption of the Federal Rules of Evidence. In particular, Rule 901 now sets forth the appropriate test for a showing of authenticity of evidence, in order to allow the jury to consider that evidence. The Federal Rules of Evidence provide that "[t]he requirement of authentication...is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed. R. Evid. 901(a). Thus, to the extent that Starks required "clear and convincing evidence," it is no longer good law with respect to the preliminary finding to be made by the trial court.

  The Third Circuit has held that "[t]he burden of proof for authentication is slight." McQueeney v. Wilmington Trust Co., 779 F.2d 916, 928 (3d Cir. 1985). The rule does not "require anything more than a prima facie showing that the evidence is what its proponent claims it to be." In re Japanese Electronic Products Antitrust Litigation, 723 F.2d 238, 285 (3d Cir. 1983), rev'd on other grounds, 475 U.S. 574 (1986). "All that is required is a foundation from which the fact-finder could legitimately infer that the evidence is what its proponent claims it to be." Id. After this preliminary determination, the final assessment of authenticity is left to the jury. Id.

  Moreover, Starks is no longer controlling to the extent that it suggests a particular formulation must be followed to establish authenticity of tape recordings. Authentication issues

are determined under Rule 104(b), as the Advisory Committee Notes to Rule 901 make clear. Authentication issues under Rule 901 do not present the nettlesome and grave policy concerns that generate rules of categorical inadmissibility, as do hearsay, privileges, and confessions. Rather, "once the court finds that evidence has been introduced sufficient to permit a reasonable juror to find that the matter in question is what its proponent claims, a sufficient foundation for introduction in evidence has been laid..." United States v. Reilly, 33 F.3d 1396, 1404-05 (3d Cir. 1994) (internal quotations and citation omitted); United States v. Almonte, 956 F.2d 27, 29-30 (2d Cir. 1992) (per Advisory Committee Notes to Rule 901(a), authentication issues are dealt with under Rule 104(b)).[1] Thus, the Starks rule imposed a higher burden for admission of recordings than currently applies for admission of any other type of evidence.

To be sure, in some cases the factors listed in Starks may remain relevant to the preliminary determination. This is particularly so in a case in which the participants to the conversation are not available, and the government must establish the identity of the persons on the recording and the absence of any malfunction or alteration. See Rule 901(b)(9) (evidence may be authenticated by proof "describing a process or system used to produce a result and showing that the process or system produces an accurate result"). Indeed, although the requisite foundation

---

[1] The rules of evidence (except as to privileges) do not apply in the determination of preliminary questions under Rule 104(a). Rule 104(a); Bourjaily v. United States, 483 U.S. 171, 178 (1987) (hearsay may be considered in determination of whether co-conspirator statement was admissible under Rule 801(d)(2)(E)); Brosius v. Warden, U.S. Penitentiary, Lewisburg, 278 F.3d 239, 246 (3d Cir. 2002) (hearsay may be considered in determination of voluntariness of confession at suppression hearing); In re Japanese Electronic Products Antitrust Litigation, 723 F.2d 238, 287-288 (3d Cir. 1983) (court, not jury, makes preliminary determinations about admissibility under business records hearsay exception; hearsay may be used at preliminary hearing), rev'd on other grounds, Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 577 (1986).

4

may come from a participant to the conversation, such a witness is not required. Numerous federal cases recognize that the foundation for recordings may be provided circumstantially through evidence that the events discussed on the tapes in fact occurred and that the purported speakers on the recordings in fact participated in those events. See, e.g., United States v. Restrepo, 814 F.2d 1236, 1241 (7th Cir. 1987); United States v. O'Connell, 841 F.2d 1408, 1421 (8th Cir. 1988) ("In view of the identity between the scenario arranged on the telephone and that subsequently enacted, ...'the substance of the communication itself may itself be enough to make prima facie proof[,]'" quoting United States v. Bonanno, 487 F.2d 654, 659 (2d Cir. 1973); United States v. Bright, 630 F.2d 804, 820 (5th Cir. 1980) (taped conversation admitted based on testimony of agent who did not hear the conversations at issue but observed, from afar, the recording agent initiate the conversation with the defendant); United States v. Fuentes, 563 F.2d 527, 532 (2d Cir. 1977) (holding testimony of an agent who did not observe the conversations in question was sufficient since he immediately took custody of the tapes after conversations ended).

The audio recordings referred to above are telephone calls between persons incarcerated in correctional facilities, which calls are routinely recorded via mechanical means as a matter of facility policy. Each of the facilities relies on an automatic recording system (TRUFONE in the case of the Federal Detention Center, and Securus in the case of the Worcester County Detention Facility) that makes accurate and reliable recordings of the conversations had over the systems. Moreover, the recordings have not been altered, edited, or tampered with in any way. Thus, as to the audio recordings of the conversations sought to be admitted in this case, the government avers:

      (a)    The recording devices used were capable of accurately recording the conversations;

5

      (b)    The operators of the recording device were competent;

      (c)    The audio recordings are authentic and correct;

      (d)    There have been no changes in, additions to, or deletions from the portion of the recordings being offered into evidence;

      (e)    The tape recordings have been properly preserved;

      (f)    The speakers on the tape recordings are properly identified;

      (g)    The consenting party to the recording freely and voluntarily consented to the recording of the conversations; and

      (h)    The transcripts to be prepared of the particular audio recordings to played at trial will accurately represent the conversations on the recordings and accurately identify the speakers and parties to the recorded conversations.

Based upon the foregoing, the government respectfully suggests that the authentication requirements of Rule 901 (and, to the extent the Court deems them still applicable, the

requirements of Starks) are fully satisfied by the audio recordings sought to be introduced in this case.

WHEREFORE, the government respectfully requests this Court to issue an Order finding the audio recordings described above admissible at trial.

                                                Respectfully submitted,

                                                WILLIAM M. McSWAIN
                                                United States Attorney

                                                *s/Seth Schlessinger*
                                                SETH M. SCHLESSINGER
                                                Assistant United States Attorney
                                                JESSICA L. URBAN
                                                Trial Attorney

Dated: October 19, 2018

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a copy of the foregoing document was filed with the Clerk of Court, and served upon all counsel of record, via CM/ECF.

*s/Seth Schlessinger*
SETH M. SCHLESSINGER
Assistant United States Attorney

Date: October 19, 2018