IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | : |
| | : CRIM. NO. 18-193 |
| DKYLE JAMAL BRIDGES | : |
| KRISTIAN JONES | : |
| ANTHONY JONES | : |

**GOVERNMENT'S REPLY IN FURTHER SUPPORT OF ITS PREVIOUSLY
CONDITIONALLY GRANTED MOTION TO ADMIT AUDIO RECORDINGS**

The arguments raised in defendant Kristian Jones's recently filed Revised Response in Opposition to the Government's Motion to Admit Audio Recordings (ECF No. 140)—which motion was long ago filed (ECF No. 59) and granted (ECF No. 80)—lack merit.  To minimize the risk of further dispute at trial over the admissibility of the recorded jail calls that the Government plans to introduce, however, the Government briefly replies to Jones's contentions and confirms its intent to offer calls from the Federal Detention Center in Philadelphia (FDC-Philadelphia), the Worcester County Detention Center in Maryland, and Delaware County Correctional Facility in Pennsylvania.

In short, and contrary to Jones's argument, the audio recordings the Government plans to introduce into evidence were not obtained in violation of the wiretap statute, do not violate the Fourth Amendment, and are not precluded by Federal Rules of Evidence 401 and 403.  Indeed, Jones's argument is predicated largely on selective quotes from cases that, in actuality, found the jail calls *admissible*.  Therefore, the Court should grant the Government's motion and admit the audio recordings at trial.

I. **THE AUDIO RECORDINGS DO NOT VIOLATE THE WIRETAP STATUTE (18 U.S.C. §§ 2510 *ET SEQ.*), BECAUSE BOTH THE CONSENT AND LAW-ENFORCEMENT DUTY EXCEPTIONS APPLY.**

Assuming that the Third Circuit would find that the wiretap statute ("Title III") applies to inmates' jail calls, *see* ECF No. 140 at 3 n.2 (citing cases from other circuits), Jones glosses over the extensive case law holding that recorded jail calls fall within Title III's exceptions to the general restriction on intercepting telephone calls. First, the statute permits such interception without prior judicial authorization when "one of the parties to the communication has given prior consent to the interception." 18 U.S.C. § 2511(2)(c). As the very cases Jones cites make clear, the legislative history surrounding the consent exception suggests it is meant to be construed broadly, *United States v. Amen*, 831 F.2d 373, 378 (2d Cir. 1987), and consent may be either express or implied. *Id.* It is thus unsurprising that courts—including the Third Circuit—have repeatedly held that "the 'consent' exception applies to prison inmates, such as [the defendant], required to permit monitoring as a condition of using prison telephones." *United States v. Hammond*, 286 F.3d 189, 192 (2d Cir. 2002) (collecting appellate cases); *see, e.g.*, *United States v. Hodge*, 85 F. App'x 278, 281 (3d Cir. 2003) (finding implied consent to interception based on "notice of the taping of the calls").

Jones cannot credibly claim that he was unaware his jails calls were being recorded when he chose to make those calls and engage in conversation.[1] And his contention that he pursued

---

[1] For example, before connecting a call and allowing communications to ensue at the Worcester County Detention Center, a recorded warning announced that "[ca]lls are subject to recording and may be monitored" and "[t]his call is subject to recording and monitoring." At the Delaware County Correctional Facility, the recorded warning similarly announced that "[t]his call is . . . subject to monitoring and recording." And at FDC-Philadelphia, the recorded warning announced that "[t]his call is being recorded and is subject to monitoring. Hang up to decline the call, or to accept dial 5 now." *See also, e.g.*, 25 C.F.R. § 540.102 ("The Warden shall establish

2

making those calls "out of necessity" has been appropriately rejected by other courts. *See, e.g.*, *United States v. Footman*, 215 F.3d 145, 154-55 (1st Cir. 200) (rejecting prisoner's argument that "extracting consent as a condition of access to a telephone call by a prisoner means the consent is not voluntary") (cited favorably by the Third Circuit in *Hodge*, *see* 85 F. App'x at 281 n.2).

Second, and independently, the wiretap statute permits interception "by an investigative or law enforcement officer in the ordinary course of his duties." 18 U.S.C. § 2510(5)(a)(ii). Courts have repeatedly held that this law-enforcement duty exception applies to jail calls monitored and recorded as part of a regular procedure at the facility—including in the very cases relied on by Jones. *See, e.g.*, *Hammond*, 286 F.3d at 192 (noting the facility was "acting pursuant to its well-known policies in the ordinary course of its duties in taping the calls"); *United States v. Feekes*, 879 F.2d 1562, 1565 (7th Cir. 1989) (holding the law-enforcement exception was "clearly satisfied"); *United States v. Daniels*, 902 F.2d 1238, 1245 (7th Cir. 1990) (same); *United States v. Cheely*, 814 F. Supp. 1430, 1441-43 (D. Alaska 1992) (same); *see also United States v. Clark*, 651 F. Supp. 76, 79-80 (M.D. Pa. 1986) (same).

Jones's calls were clearly monitored and recorded as part of the facilities' routine procedures for all inmates, and did not involve "the ad hoc monitoring of a single inmate." *Cheely*, 814 F. Supp. at 1442-43. *See, e.g.*, *supra* n.1. The calls are therefore admissible under § 2510(5)(a)(ii)'s exception to the wiretap statute as well.

---

procedures that enable monitoring of telephone conversations on any telephone located within the institution, said monitoring to be done to preserve the security and orderly management of the institution and to protect the public. The Warden must provide notice to the inmate of the potential for monitoring.").

3

## II. THE AUDIO RECORDINGS DO NOT VIOLATE THE FOURTH AMENDMENT, BECAUSE JONES HAD NO REASONABLE EXPECTATION OF PRIVACY IN HIS PRISON CALLS.

Curiously, Jones cites only *United States v. Shavers,* 693 F.3d 363 (3rd Cir. 2012), *vacated on other grounds*, 570 U.S. 913 (2013), in support of his Fourth Amendment argument against admission of the jail calls. ECF No. 140 at 4. *Shavers*, however, explicitly stated that "prisoners do *not* have a reasonable expectation of privacy when speaking on a prison telephone, especially where a warning has been given." *Id.* at 390 n.7 (3rd Cir. 2012) (emphasis added); *accord, e.g.*, *United States v. Clark*, 651 F. Supp. 76, 81, 83 (M.D. Pa. 1994) (rejecting defendant's Fourth Amendment contention that he had a reasonable expectation of privacy in his jail calls, and finding the calls admissible) (citing *Hudson v. Palmer*, 468 U.S. 517, 526 (1984)). Because Jones had no reasonable expectation of privacy in his knowingly monitored jail calls, the Fourth Amendment is no obstacle to their admission.

## III. THE AUDIO RECORDINGS DO NOT VIOLATE FEDERAL RULES OF EVIDENCE 401 AND 403, BECAUSE THEIR HIGH PROBATIVE VALUE IS NOT SUBSTANTIALLY OUTWEIGHED BY THE RISK OF ANY UNFAIR PREJUDICE ARISING FROM THE FACT THEY WERE MADE FROM JAIL.

Jones concedes the "high" probative value of "statements of self-incrimination" on the jail calls. ECF No. 140 at 5. His contention that "this probative value is substantially outweighed by the overwhelming risk of unfair prejudice which arises from the fact that the phone calls were placed from prison facilities," *id.*, however, is ill-founded.

As an initial matter, the Government has no plans to "play the recordings in full," *id.*, or otherwise to present a "'constant reminder' to the jury of the defendant's condition so as to impair the presumption of his innocence." *United States v. Faulk*, 53 F. App'x 644, 647-48 (3rd Cir. 2002); *see, e.g.*, *Powell v. Link*, No. 15-civ-5085, 2017 WL 7795393, at * 15 (E.D. Pa. Nov. 16,

4

2017) (recognizing that "[m]ere fleeting references to a defendant's incarceration" do not create such prejudice), *adopted*, 2018 WL 1071926 (E.D. Pa. Feb. 27, 2018).[2]  Rather, the Government intends to play a small number of calls, or portions thereof, in which Jones discusses and evinces his involvement in the charged sex trafficking enterprise.  While the Government is still assessing precisely which excerpts it will offer, the mere fact that Jones's incarceration at the time of the call might be disclosed is not a ground for exclusion.  Indeed, seeking to redact such information may "leave a chronological and conceptual void in the story," *United States v. Vretta*, 790 F.2d 651, 655 (7th Cir. 1986), and leave the jury confused and speculating as to the circumstances under which the calls were recorded and the statements made.

## CONCLUSION

For the foregoing reasons, the Court should admit the Government's proposed audio recordings.

Respectfully submitted,

WILLIAM M. McSWAIN
United States Attorney


s/ Jessica Urban
SETH M. SCHLESSINGER
Assistant United States Attorney
JESSICA URBAN
Trial Attorney
Child Exploitation & Obscenity Section
U.S. Department of Justice

Dated: February 12, 2019

---

[2] *Estelle v. Williams*, which addressed compelling a defendant to wear identifiable prison clothes throughout trial, is thus beside the point.  425 U.S. 501 (1976).

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 12, 2019, I filed this document electronically using the CM/ECF system and thereby caused a copy of the same to be served on all counsel of record.

s/ Jessica Urban
JESSICA URBAN
Trial Attorney
Child Exploitation & Obscenity Section
U.S. Department of Justice
